**UNITED STATES of America, Plaintiff,**

v.

**Edward H. LINER, Defendant,**

and

**Merchants Finance Corporation, Intervenor.**

Civ. A. No. 67–793–F.

United States District Court
D. Massachusetts.

June 24, 1969.

Anthony F. O'Donnell, Small Business Administration, Boston, Mass., for plaintiff.

Lawrence H. Adler, Michaels & Adler, Boston, Mass., for defendant.

Walter H. McLaughlin, Jr., Boston, Mass., for third party deft. Morris Freidus.

### OPINION

FRANCIS J. W. FORD, District Judge.

This is an action by the United States on behalf of its agency, the Small Business Administration as receiver by appointment of this court of American Capital Corporation, to recover damages from defendant Liner, and to reach and apply certain funds held by this court

against Liner's alleged liability. Merchants Finance Corporation has been allowed to intervene on its claim it is the owner of said funds.

American Capital Corporation (American) is a Massachusetts corporation licensed on or about January 1, 1962 by the Small Business Administration as a Small Business Investment Corporation under the Small Business Investment Act of 1958, 15 U.S.C. § 661 et seq. From the time of its organization until May 25, 1965, defendant Liner was president of American and owned 51% of its stock. Liner was also president and controlling stockholder of Merchants Finance Corporation (Merchants), which was engaged in making loans of moderate size to business men. American occupied part of the office premises of Merchants and shared payments for office rental and other expenses.

Between June 5, 1962 and April 23, 1963 Merchants made a series of loans aggregating $13,600 to one Arnold Chessler, who was engaged in the business of buying and selling used machinery under the name of Arnold Machinery Company. These loans were made on demand notes bearing interest at the rate of 2% per month. In September of 1964 a balance of $3,709.10 remained unpaid on these loans. At that time Chessler told Liner that in order to establish a larger inventory he would like to borrow a larger sum for a longer term at a lower interest rate. Merchants was not prepared to make him a loan on these terms but Liner suggested borrowing from American.

On September 28, 1964 the Board of Directors of American approved a loan of $10,000 for five years at 15% per annum to Arnold Machinery Corporation, a corporation newly formed by Chessler to take over his business enterprise. Before this loan was approved Liner disclosed to the directors Chessler's previous dealings with Merchants and the fact that part of the $10,000 loan would be used to pay off the $3,709.10 balance due to Merchants. The $10,000 note was secured by a pledge of all the capital stock of Arnold Machinery Corporation, with undated resignations of all its officers delivered to American, a chattel mortgage on Chessler's motor vehicle and a security agreement covering all the inventory, equipment and accounts receivable owned or thereafter acquired by Arnold Machinery Corporation. Merchants upon payment of the $3,709.10 released all its claims on any of the security given to American. The proceeds of the loan were paid into a bank account of Arnold Machinery Corporation, set up so that two signatures were required for withdrawals or checks, one of these to be the signature of the president of American.

On February 18, 1965 American loaned $30,000 to Arnold Machinery Corporation, on terms like those of the earlier $10,000 loan and on similar security. Part of the proceeds of the $30,000 loan were used to pay the entire balance then owed on the $10,000 loan.

In the spring of 1965 Liner decided, for reasons of health, to curtail his business activities. On May 25, 1965 he sold his stock in American to one John J. McCullough. Liner resigned his offices in American and under the agreement was to be free to engage in the finance business except that he was not to be associated for a period of five years with any small business investment company operating in the New England Area. He also signed an agreement to serve as a consultant for American for a period of ten years at an annual salary of $7,800, to advise on matters of general investment and general management. At first McCullough, as the new president of American, frequently asked his advice on the making of loans. After a time American no longer called on him for advice and stopped paying him.

Between June 1, 1965 and April 11, 1966 Liner, Chessler and one Morris Freidus took part in a series of transactions known as "three-way deals". In brief, Chessler and Freidus would purchase lots of used machinery at auction,

repair and repaint it, and resell it. Liner, either personally or after March 3, 1966 through Merchants, advanced all the money to pay for the machinery and the expenses of the transaction, and received the full payments for the machinery when it was resold. After reimbursing himself for his advances and paying all expenses, he divided the profits on each transaction equally among the three participants.

Toward the end of 1965 it was agreed to form a corporation to handle these transactions. Bell Machine & Tool Corp. (Bell) was organized as a Massachusetts corporation in December, 1965. Freidus turned over to Bell the assets of his sole proprietorship. Chessler paid $15,000 for half the stock of Bell, Freidus retaining the other half. This $15,000 Chessler obtained as a loan from Merchants, pledging his stock in Bell as security.

As a result of these 17 transactions about $4000 was paid to Chessler or to Arnold Machinery Corporation as Chessler's share of the profits. After Chessler had borrowed $15,000 from Merchants to purchase his Bell stock, Liner, when he gave Chessler a check for his share of the profits on a particular transaction, would receive back payment of any amount then due to Merchants on the loan.

Before engaging in the series of "three-way deals" Liner told McCullough what he was planning to do. McCullough said he had no objection as president of American, but would approve of any enterprise in which Chessler or his company could earn a profit. Liner himself took no direct steps to collect from Chessler any amount due to American on the loan to Arnold Machinery Corporation. He did several times remind Chessler of his obligations to American and also informed McCullough when he was making payments to Chessler.

Sometime shortly after April 11, 1966 Liner had a disagreement with Chessler and Freidus over the operation of the "three-way deals", which resulted in a suit by Liner against the other two. This litigation was settled by an agreement dated June 6, 1967 under which Merchants became owner of all the stock of Bell. Merchants proceeded to liquidate Bell. In the course of this liquidation Bell sold at auction the machinery, tools and equipment of Bell. Plaintiff as receiver of American at that time asserted various claims to this property, and the net proceeds of the auction sale, in the amount of approximately $16,000, were paid into the registry of this court. Plaintiff has since stipulated that it had no property interest in the items sold at the auction sale or the proceeds of this sale. Allright, title and interest in the funds now held by the court is now in Merchants as assignee of Bell, subject only to the claim of plaintiff that such funds should be applied to the payment of any judgment plaintiff obtains in this action against Liner.

Plaintiff asserts that it is entitled to recover damages from Liner on the ground that he breached his fiduciary duties to American either in the making of the loans to Arnold Machinery Corporation or by his participation in the "three-way-deals."

When the first loan of $10,000 was made to Arnold, Liner was, of course, in a position of conflict of interest because of the fact that part of the proceeds of the loan was to be used to pay off Arnold's existing indebtedness to Merchants, which Liner controlled. This loan, however, was approved by the directors of American only after full disclosure by Liner of the facts relating to his interest in the matter. On the evidence it appears that the loan was made in accordance with the purposes of the Small Business Act and upon adequate security and protection for the lender. Moreover, the loan was eventually paid and hence American suffered no injury from this transaction.

The second loan to Arnold in the amount of $30,000 has not been paid.

This loan, too, appears to have been made in accordance with the purposes of the Act and on reasonable security. No part of the proceeds of this loan ever came into the hands of Liner or Merchants. There was no evidence of any conflict of interest or of any bad faith on the part of Liner. The making of the loan was regular and proper and cannot be the basis for imposing any liability on Liner.

The principal contention of plaintiff now seems to be that Liner's participation in the "three-way deals" was a breach of his fiduciary duty to American. At the time of these transactions Liner was no longer a director or officer of American and he no longer owned any of the stock of American. His only connection with American was as a part time consultant. There is no evidence of any failure to perform properly his duties as consultant. There is nothing to indicate that after May 25, 1965 he had any duty to take any positive steps with regard to the collection of loan payments from Arnold.

Plaintiff's claim seems to be based on the assumption that Liner after May 25, 1965 remained under a fiduciary duty of a negative sort—a duty, that is, to refrain in general from any activity which would hinder American's collection of the payments due to it from Arnold. Assuming Liner had such a duty, it cannot be found that anything he did violated that duty and thereby injured American.

Liner's participation in the three-way transactions was undertaken with the knowledge and approval of McCullough. The financial risk in these transactions was taken solely by Liner and Merchants. These ventures in no way involved the funds loaned by American to Arnold. None of them could possibly have resulted in any financial loss to Arnold. In fact they did result in a profit to Arnold or Chessler and thus the net result was to enhance rather than impair Arnold's ability to repay American.

There was nothing improper in Liner's action in collecting payments due under Merchants' loan to Chessler. Liner was under no duty to try also to collect from Chessler payment due to American. He did nothing to interfere with any attempt of American to collect for itself, and in fact cooperated with American by informing McCullough when money was being paid to Chessler.

Plaintiff seems to argue that in some manner Liner's participation in the three-way transactions deprived Arnold of some opportunity to engage in profitable business ventures. Presumably this argument is based on an assumption that if it had not been for the three-way transactions, Arnold alone would have bought and resold the machinery involved and all the profit would have gone to Arnold. There is no evidence to indicate that Arnold would ever have engaged in these transactions by itself. In fact, there is no evidence as to what business activity, if any, Arnold was engaged in during 1965 and 1966. Its financial difficulties may well be due to unsuccessful transactions having no connection with Liner's activities. Moreover, it is doubtful if the isolated, speculative transactions involved in the three-way transactions constituted the type of business activity for which Arnold could have properly utilized funds loaned to it under the Act for the sound financing of its growth, expansion and modernization.

The conclusion must be that plaintiff has failed to establish that defendant Liner violated any fiduciary duty he owed to American, or that any action of Liner resulted in any loss to American.

Judgment will be entered for defendant Liner dismissing the complaint. Judgment will be entered for intervenor adjudging that the funds now held by this court in this proceeding are the property of Merchants Finance Corporation and directing that said funds be turned over to Merchants Finance Corporation.